ATKISSON, Defendant in Error, v. STEAMBOAT CASTLE GARDEN, Plaintiff in Error.

1. Mere hearsay testimony, the acts and declarations of third persons in no way related to the party against whom it is sought to use them, is inadmissible.

2 In an action against a carrier to recover damages for his failure to transport goods to their place of destination, if the owner seeks to recover the value of the goods at the place of destination, the freight that would have been earned by the carrier in transporting the goods to their place of destination must be taken into estimation and allowed the carrier.

3. If a carrier deliver goods at their place of destination after the appointed time, the acceptance of them by the owner will not discharge the carrier from liability for the breach of his contract; so the acceptance of goods from a carrier at a place short of their place of destination will not absolve him from liability for a breach of his contract committed before delivery; in such cases, the carrier is exempt from damages only where there has been no breach of the contract previous to the delivery of the goods.

### Error to Camden Circuit Court.

This was an action against the steamboat Castle Garden to recover damages for the breach of a contract to transport certain goods, wares and merchandise from St. Louis to Warsaw, on the Osage river, and to tow a flat-boat loaded with

whisky and lumber from the mouth of the Osage to said Warsaw. Neither the goods nor the flat-boat were taken to their place of destination, but were delivered at a point short thereof after a detention of a considerable time and in a damaged condition.

*Edwards* and *Ewing*, for plaintiff in error.

I. The court erred in admitting the evidence of Jopling contradicting his receipt, given by him while acting as agent of the plaintiff, for the flat-boat, whisky and plank. The court erred in overruling the objections by defendant to the evidence of W. E. Tutt. The court erred in permitting the instrument of writing signed by Lyle to be read to the jury. The court erred in giving the third, fifth and seventh instructions asked by the plaintiff. The court erred in giving the third, fifth and seventh instructions asked by plaintiff as to the measure of damages. The court should have refused those asked by the plaintiff as to the measure of damages, and given those asked by the defendant on that question. The court erred in refusing the fourth and sixth instructions asked by the defendant.

*F. P. Wright*, for defendant in error.

I. The instructions Nos. 3, 5 and 6, given on the part of the plaintiff, are correct. The fourth instruction asked by defendant was properly refused, and particularly as by instruction eleven the court excluded from the consideration of the jury all admissions and declarations of the clerk of the boat except such as were made by the clerk while the goods were in his immediate possession or under his control as clerk. Declarations and admissions made by an agent are competent; they in fact constitute a part of the *res gestæ.* (Story on Agency, § 134, 135; 1 Stark. Ev. 35.) The sixth instruction asked by defendant was properly refused. There is no evidence that Atkisson gave Jopling any such authority as assumed by the instruction. The law would not imply it. The receipt was written by the agents of the boat, and con-

tained statements known by them to be untrue, with the fraudulent intent of screening the steamboat from its liability, and admissions thus fraudulently obtained were not binding on Atkisson. Taking the instructions all together, the criterion of damages was properly stated. Plaintiff's fifth and sixth instructions, as to the damages for property lost, used and destroyed by defendant, were sufficiently favorable, and the eighth instruction on the part of the defendant was too favorable for defendant. When goods are entrusted to a carrier and they are not delivered according to contract, the value of the goods with the interest thereon from the day they should have been delivered at the place of destination is the measure of damages. (Sedgwick on Damages, p. 372; Shaw & Austin v. S. C. R. R. Co. 5 Pick. 462; 14 Ill. 156; Bailey v. Shaw, 4 Foster, 297.)

Scott, Judge, delivered the opinion of the court.

The judgment in this case must be reversed, if for no other reason than on account of the error in admitting as evidence the paper headed " sold J. F. Weidemeyer." This paper contained the amounts of the various bills of the goods shipped on the " Castle Garden," which were alleged to have been made with different merchants in St. Louis, with freight, insurance and ten per cent. added to the cost. There was no evidence of the authenticity of these bills or of their correctness. The witness Tutt merely stated that the plaintiff had made a contract to sell said goods to Weidemeyer before they were sold to McClung and whilst the said merchandise was on said " Castle Garden" on her way to Warsaw. The paper was then read with proof of the signature of Weidemeyer, which was subscribed, after the institution of this suit, to an acknowledgment at its foot, to the effect that he had bought the within bills of goods from Jas. Atkisson, at the prices, &c., named. So it would seem that this evidence was made for the cause. The offers, acts or declarations of Weidemeyer could not be made evidence against the defen-

dant, as they were not under oath. If his evidence was necessary, he should have been produced as a witness. There is no attempt on the part of the plaintiff to defend or even explain this departure from the rules of evidence.

We do not understand the seventh instruction given for the plaintiff. Its object is not perceived. If it was intended to give the measure of damages in an action for a breach of the contract of affreightment, it failed of its end. Neither did the fifth instruction given for the plaintiff state correctly the measure of damages in cases where a carrier fails to transport goods from one port to another in pursuance to the terms of his contract. The rule, as settled in such cases, as to the measure of damages, is the value of the goods at the place of destination, deducting freight and other expenses of transportation; for the shipper of merchandise would have to pay freight to the port of destination in order to obtain its value at that place; and if it never was delivered and no freight was paid in respect to it, if he would have the value at the place of destination, he must deduct the freight and expenses that would have been expended had the goods been delivered at the appointed place. (Nourse v. Snow, 6 Maine, 208; Watkins v. Laughton, 8 John. 213; Angel on Carriers, § 482; Sedgwick on Damages, 372.) So if the carrier earns freight in respect to the goods by carrying them to the port of destination, but not as required by his undertaking, or to a point short of it from which they were or might have been carried at a less expense by using ordinary diligence, the freight that was or might have been earned will be allowed to him. (Sedgwick on Damages, 372; McGregor v. Kilgore, 6 Ohio, 143.) The allowance of interest in these cases depends on circumstances, and will be given or withheld accordingly, as in all other cases of unliquidated damages.

We do not see that there was any error in admitting in evidence the paper signed by Lyle at the time he discharged the cargo at Linn creek; that paper contained nothing more than the declaration of the law of the case. If goods are to be delivered at a certain time, and they are delivered and ac-

cepted after the time appointed, the carrier is not thereby discharged from the payment of damages for the violation of his contract unless it is so agreed. So if goods are shipped on a voyage and the owner agrees to receive them at a place short of the port of destination, that will not free the carrier from the responsibility of damages incurred by a breach of the contract of affreightment made by him before the delivery of the goods at the intermediate place. In such cases the carrier is only exempt from the payment of damages when there has been no breach of the contract previous to the delivery of the goods. (Angel on Carriers, § 336 ; Bowman v. Teoll, 23 Wend. 306.)

There was no error in permitting the witness Jopling to explain the circumstances under which he gave the receipt for the goods at the mouth of the Osage. It would be strange if the law were otherwise. If one obtain money from another for the delivery of property which is unjustly withheld, the money may be recovered back. If one tampers with the agent of another and induces him to do an act in the name of his principal which he has no authority to do, can not the circumstances be shown in order to invalidate the act ? The defendant would induce the agent of another to give a false receipt in his name without authority, and then maintain that the facts can not be inquired into because the act of the agent is the act of the principal. This argument amounts to nothing more than the illogical *exceptio ejusdem rei, cujus dissolutio petitur*.

The court admitted the declarations of the agent of the boat. Some of these declarations were evidence and some were not. Exceptions were taken to the admission of these declarations and they were admitted against the exceptions. Afterwards the court gave an instruction that all the declarations and admissions of the clerk of the boat, except such as were made by the clerk while the goods were in his possession or under his control, were excluded from the consideration of the jury. Under these circumstances, it would have been better had the court informed the jury specifically

what declarations were withdrawn and what were not. It was an unsatisfactory way of avoiding the consequence of the admission of illegal evidence. If all the declarations had been withdrawn such a course might have been well enough, but to receive good and bad indiscriminately, and then leave to the jury to determine, though under an instruction, what should and what should not be excluded, was certainly a very unsatisfactory way of disposing of the matter.

As the judgment will be reversed, it is unnecessary to say any thing in relation to the instructions as to the measure of damages for not delivering the whisky or lumber. It is obvious that that rule is applicable to them which fixes the measure for the merchandise.

Reversed and remanded; Judge Richardson concurs. Judge Napton absent.